THE PEOPLE ex rel. PLATT et al., Respondents, *v.* FRANK RICE et al., Appellants.

A party who has neglected or disobeyed an order of the court, after appealing from it and stipulating to abide by the decision on appeal, may not claim in justification that the court had no jurisdiction to make the order.

While jurisdiction of the subject-matter cannot be conferred by consent of the parties, where the court has jurisdiction a question as to the authority of one branch of it to make the particular order may be waived.

While the power of the court below to enforce an order may be suspended as the result of an appeal therefrom to this court, the order loses

none of its strength pending the appeal, and although modifications are made in its terms by the appellate court, to the extent that it is affirmed it is the same order, to the validity and force of which has been added the sanction of this court.

A person who, after the court has decided to restrain the doing of an act and with knowledge of the decision, does the act may be guilty of contempt, although the decision has not been formulated into an order or writ.

In 1891 the board of county canvassers of Dutchess county returned a statement of the result of the votes for senator, which the county clerk refused to attest as required by the statute. The board thereupon appointed M., one of its members, secretary, who signed and attested the statement, which was duly filed with the state board of canvassers. An application to the Special Term for a writ of mandamus directed to the members of that board was based upon the claim that the paper so filed was defective, erroneous and invalid because not signed, certified to and transmitted by the county clerk, and that it was an illegal and erroneous canvass of the returns of the inspectors of election, which showed that D., the candidate who, by the statement, was shown to have the minority of the votes had in fact the majority. This was not denied by defendants, nor was any explanation made as to the manner of reaching the result appearing in the M. return; defendants claiming that return to be the legal one, which could not be questioned. The Special Term, after hearing the parties, granted a writ of peremptory mandamus commanding defendants to issue a certificate of election to the office of senator in the district which included said county, disregarding the return signed by M., and that instead thereof they consider only such return from the county as might thereafter be made and filed by the county clerk. On the day this order was made the parties signed a written stipulation which provided for the taking of an immediate appeal to the General Term and for a further and immediate appeal by the defeated party to the Court of Appeals; also for suspension by defendants of their proceedings for the canvass of the votes until the decision of the Court of Appeals, and that the canvass should be completed and the certificate of its result made in accordance with the decision. Another and corrected return was thereafter received by defendants. The order was affirmed by the General Term, and on appeal to this court it was modified by striking out the provision requiring a return to be certified to and to come from the county clerk, and was affirmed as modified. In the opinion of the court it was declared that the state board could not itself inquire into the allegations as to the manner of making the M. return, but that "if another return should be duly sent to the board, properly authenticated and containing the result of the legal action of the county board of canvassers the state board could canvass it." On the evening of the day the decision and order of this court was handed down, and before

the remittitur was filed, the state board met and proceeded to canvass the votes for senator using for that purpose the M. return.   Previous to said meeting the opinion and order of this court were read or otherwise made known to defendants.   In proceedings to punish defendants for alleged contempt of court, it was adjudged that they were guilty of contempt in disobeying the order of the court, but that the disobedience was not willful, and they were fined the amount of complainants' costs and expenses.   *Held*, that the order in the mandamus proceedings appealed from having been affirmed save so far as it required the return of the county board to be made and certified by the county clerk, it stood unaffected as a direction to disregard the M. return, and in disobeying that order and also disregarding the decision of this court the members of the state board were guilty of contempt (Code Civ. Pro. § 14, subd. 8); that they by their stipulation waived the right to raise the objection that the Special Term had no power, under the Code of Civil Procedure (§ 605), to make an order restraining the action of the state board.

Also *held*, the fact that no writ of mandamus was issued under the Special Term order was immaterial; that the contempt consisted in the fact that defendants, knowing of the orders, had done the thing which the issuing of the writ was intended absolutely to prevent.

D., the candidate for senator, who by the M. return appeared to have the minority of the votes, but who by the other return appeared to have the greatest number, having died, the proceedings against the state board were instituted by voters in the senatorial district which included Dutchess county.   *Held*, that the relators had the right to institute the proceedings.

(Argued December 10, 1894; decided December 21, 1894.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made September 27, 1894, which affirmed an order of Special Term adjudging defendants guilty of contempt and imposing a fine.

The defendants constituted the state board of canvassers, whose duty it was to canvass the returns from the various counties of the state of the votes cast therein at the election held in 1891.   A dispute arose in Dutchess county over the election of senator for the fifteenth senatorial district.   The county board of canvassers returned a certain statement of the result of the votes, which the county clerk, as secretary of the board, refused to attest as required of him by the statute. The board, thereupon, appointed one of their number, John J. Mylod, secretary *pro tem*, and he signed and attested the

statement of the board; which was duly forwarded to the
state board of canvassers. According to this statement,
Edward B. Osborne appeared to have the greatest number of
votes for senator. The opposing candidate, Gilbert A. Deane,
having died, the relators, who were voters in two of the coun-
ties in the senatorial district, instituted proceedings against the
members of the state board; claiming that the paper filed
with them by the county board was defective, erroneous and
invalid; upon the grounds that it had not been signed, or
certified to, by the county clerk, nor by him transmitted to
the state board, and that it contained the result of an illegal
and erroneous canvass of the returns of the inspectors of
election in the whole county, whereby a greater number of
votes was counted for Mr. Osborne than he was entitled to
and which gave him an apparent plurality of fourteen votes
in the senatorial district. Upon the application of the
relators, and after hearing the parties, the Supreme Court, at
Special Term, on December 7th, 1891, ordered that a writ of
peremptory mandamus issue, commanding "the state board
of canvassers that they issue a certificate of election to the
office of senator in the fifteenth senatorial district of this
state, disregarding the return of the board of county can-
vassers of the county of Dutchess, which is signed by John
J. Mylod as secretary of said board *pro tem*, but that instead
thereof they consider only such return from the county of
Dutchess as may hereafter be filed; and that in their certifi-
cate of election the said state board of canvassers certify and
declare that the person who appears upon the certified returns
and statements made by the boards of canvassers of the coun-
ties of Columbia, Putnam and Dutchess, in pursuance of the
statute and the order of the court, to have received the great-
est number of votes was duly elected senator from the said
fifteenth senatorial district."

On the same day that this order was made, the parties
entered into a written stipulation, which provided for the tak-
ing of an immediate appeal therefrom to the General Term;
for securing an immediate hearing before that court and for

the further and immediate appeal by the defeated party thereat to the Court of Appeals. It, further, provided for the suspension by the defendants of their proceedings for the canvass of votes, until the decision of the Court of Appeals, and that such canvass should be completed and the certificate of its result made in accordance with that decision. The General Term affirmed the order, upon the appeal there, and, upon the appeal to this court, this order was made, viz. :

" It is ordered and adjudged that the order of the Special Term herein, dated December 7, 1891, and the order of the General Term affirming the same, and the same writ itself be modified by striking out the provision requiring a return to be certified by and to come from the county clerk of Dutchess county, and issued under his seal, and that the said order, so appealed from, as so modified, be affirmed, without costs."

In the opinion of this court, in which all the members of the court concurred, the illegality of the canvass of the county board, as alleged in the record, was adverted to and discussed. It was pointed out that the allegations relating to the making up of the canvass by the county board in opposition to the actual returns were not denied and that there was no explanation, nor contradiction, as to their manner of arriving at the result ; the defendants practically resting their case upon the return being a legal one, which could not be questioned. It was said in the opinion of this court that the state board could not itself inquire into the allegations as to the making of the return ; but that " if another return should be duly sent to the board properly authenticated and containing the result of the legal action of the board of county canvassers, the state board could canvass it." It appears that another and corrected return was mailed to the defendants; but failed to get into their hands and, eventually, reached them by private hand on December 23rd, 1891. The decision and order of this court were handed down early in the afternoon of December 29th, 1891. In the evening of that day, and before our remittitur had been filed, the defendants met in board meeting and at once proceeded to canvass the votes for the

office of senator in the fifteenth senatorial district, from the return which had been signed and certified to by Mylod. It appears that, previous to said meeting, our opinion and order were read, or otherwise made known to the defend ants. The present proceeding in the matter has been instituted to have the defendants adjudged guilty of the offense of contempt of court. An order to show cause issued, which recited the order of December 7th, 1891, and the various facts herein before mentioned or alluded to ; that the defendants were guilty of deceit, in that they entered into the stipulation for the purpose of obtaining a stay of the issuance of the writ of mandamus, without any intention of abiding by it ; that in their proceedings they were guilty of an abuse of proceedings in the court and that in holding their meeting, before the order of this court could be made the order of the Supreme Court and before a writ of peremptory mandamus could. be issued in pursuance thereof, and in disregarding the provisions and requirements of the order of December 7th, 1891, as modified and affirmed by this court, they showed a gross want of the regard and respect due to the said order ; and the several defendants were required to show cause why they should not be punished, etc. At first the application for the order to show cause was denied ; but upon appeal the General Term reversed the order denying the application and granted the same and that court ordered the defendants to show cause, etc., at the Special Term, at a time and place designated. Accompanying the service of the papers was a notice by the attorneys for the relators, to the effect that, upon failure of the defendants to show cause as required, an order would be moved for, adjudging them in contempt of court and imposing a sentence of 30 days imprisonment in the county jail and a fine of $250, or such other sentence or fine as the court might deem proper. The answer of the defendants was in justification of their action ; substantially setting forth that they were advised that the order of December 7th, 1891, was void for want of jurisdiction ; that the modification by this court of that order deprived it of its restraining force, and, as they construed it,

made it meaningless or ambiguous; that the allegations of a conspiracy, or of fraud and deceit, or of willful disobedience to the lawful mandate of the Supreme Court were false and untrue; that they had acted in the utmost good faith in the discharge of a public duty and without any disrespect to the court, or any intention to disobey its order; that the question involved was substantially a question of construction, as to the meaning of the decision of this court, and that their view was one also taken by various members of the legal profession and concurred in by some of the justices of the Supreme Court. After hearing the parties, the court made an order; which recited the facts connected with the order of December 7th, 1891, and its affirmance by this court; that it appeared from the papers that, pending the appeal to this court from the order of December 7th, 1891, another return of the board of county canvassers was filed with, and delivered to, the proper state officials and was in the possession of the defendants on December 29th, 1891; that it appeared upon the return signed by Mylod that Osborne had received the greatest number of votes; that it appeared that on December 29th, 1891, after the decision of this court, and before its judgment could be made the judgment of the Supreme Court and the writ of mandamus issued, the defendants met as a board and, regarding the so-called Mylod return and not regarding the subsequent statement delivered to them, or in their possession, issued their certificate of election, declaring that Mr. Osborne had received the greatest number of votes for the position of senator. The order then recited that " it appearing that defendants, in canvassing the said returns from said counties aforesaid, and in issuing their certificate of election aforesaid, were guilty of the offense of contempt of this court, and that such contempt was calculated to and actually did defeat, impair and prejudice the rights and remedies of the relators herein; and that such disobedience was not willful," and adjudged the defendants guilty, in terms as recited, and, because no actual loss or injury had been produced to the relators, fined them in the sum of $831.28, the amount of the complainants' costs and

256     People ex rel. Platt et al. *v.* Rice et al.     [Dec.,

Statement of case.                              [Vol. 144.

expenses in prosecuting the contempt proceeding. The appeal of the defendants to the General Term did not prevail there and they have appealed to this court from the order of affirmance.

*J. Newton Fiero* for appellants. The Supreme Court never obtained jurisdiction of this proceeding, and it is not now pending in this court, but remains in the Court of Appeals. This order, therefore, cannot be sustained for want of jurisdiction in the Supreme Court to entertain this proceeding. (*People ex rel.* v. *Village of Nelliston,* 79 N. Y. 638 ; *Olmstead* v. *Town of Round Ridge,* 71 Hun, 25 ; *Ex parte Livingston,* 34 N. Y. 555 ; *Bank* v. *Ayers,* 19 Hun, 17 ; *Jones* v. *Norwich,* 50 Barb. 193.) The rights of defendants are in no wise affected by the stipulation entered into by these defendants, and, on the other hand, the plaintiffs are bound by the allegations in defendants' answer, and they must be accepted as true for the purposes of this proceeding. (Rapalje on Contempts, 164.) No writ of mandamus was either granted or served under the Special Term order of December seventh, or after the modification of that order by the Court of Appeals. This is fatal to the proceeding. (*Rex* v. *Westlove,* 3 B. & C. 685 ; *Hynde* v. *Blake,* 5 Beav. 431 ; *Rex* v. *Exeter,* 12 Mod. 251 ; *Ladue* v. *Spaulding,* 17 Mo. 159 ; Code Civ. Pro. § 802.) Aside from the fact that no writ of mandamus was issued either upon the original order or after the appeal to the Court of Appeals, the order here appealed from must be reversed because no order was ever granted directing a writ to issue after the modification of the order of December seventh by the Court of Appeals. (*Jones* v. *Marsh,* 4 T. R. 464; *Howland* v. *Ralph,* 3 Johns. 20 ; *Sanford* v. *Sanford,* 40 Hun, 540 ; *McCaulay* v. *Palmer,* Id. 38; *Pitt* v. *Davison,* 37 id. 235 ; *Watson* v. *Fuller,* 9 How. Pr. 425 ; *Livingston* v. *Smith,* 23 id. 1.) The orderly method of procedure demanded that a writ of mandamus should issue, and a return be required to be made and refused by the defendants before proceedings for contempt will lie.

(Code Civ. Pro. §§ 2073, 2074; *People ex rel.* v. *R. & S. L. R. Co.,* 14 Hun, 370.) The failure to issue a writ after the modification by the Court of Appeals, aside from the fact that no writ was ever issued in the first instance, is fatal upon authority as well as upon principle. (*U. S.* v. *Kendall,* 5 Cranch, 385.) This is a proceeding to punish for a criminal contempt, and can only be enforced under subdivision 3, section 7 of the Code, giving power to the court to punish for willful disobedience to its lawful mandate. It has been so treated by plaintiffs in their notice of application to the Special Term, and they are bound by their election to so consider it. (*People* v. *Cowles,* 4 Keyes, 38; *People ex rel.* v. *Dwyer,* 90 N. Y. 406; Code Civ. Pro. §§ 2284, 2285; *King* v. *Barnes,* 113 N. Y. 480; *People ex rel.* v. *Rice,* 129 id. 449.) The defendants cannot be adjudged guilty of a criminal contempt as defined by section 8, subdivision 3, Code of Procedure, since they have not been guilty of a "willful disobedience of a lawful mandate of the court." (*McKelsey* v. *Lewis,* 3 Abb. [N. C.] 62.) There can be no punishment for contempt for disobedience of an ambiguous order, and in this case there was no clear or definite rule or order ever granted or served. (*Sherwin* v. *People,* 100 N. Y. 358; *Ross* v. *Butler,* 57 Hun, 110; *Sutton* v. *Davis,* 64 N. Y. 633.) Upon the facts shown by the papers presented by the defendants, and which did not appear upon the previous application and were not considered on the previous appeal, there was no willful disobedience to the lawful mandate of any court. (*Kelly* v. *Atkin,* 19 Hun, 329; *Fishback* v. *State,* 131 Ind. 318; *Fischer* v. *Roal,* 81 N. Y. 239; *State* v. *Hardy,* 14 Wis. 151; *Hope* v. *Carnegie,* L. R. [7 Eq.] 260; *Wass* v. *Stevens,* 128 N. Y. 123; *Hewitt* v. *Newberger,* 141 id. 543.) The determination of the state board of canvassers was right upon the merits. (*People ex rel.* v. *Rice,* 129 N. Y. 449; *People ex rel.* v. *Bd. Suprs.,* 135 id. 522; Code Civ. Pro. §§ 2266, 2281; *O'leary* v. *Christie,* 41 Hun, 566; *Cambers* v. *McDonald,* 25 N. Y. S. R. 133.)

SICKELS — VOL. XCIX. 33

*John Brooks Leavitt* for respondents. Under any construction of the order of the Supreme Court, as modified by this court, the appellants disregarded it. (*People* v. *State Board,* 74 Hun, 183.) In acting before the writ of mandamus could in orderly practice be issued, and in a manner which prevented them from obeying it when issued, the defendants were guilty of misconduct punishable as a civil contempt. (*People ex rel.* v. *R. & S. L. R. R. Co.,* 76 N. Y. 294; *People ex rel.* v. *Bd. Suprs.,* 135 id. 522; *People ex rel.* v. *Van Buren,* 136 id. 252; *Osborne* v. *Tenant,* 14 Ves. 136; *Robinson* v. *Grover,* 138 N. Y. 430; *King* v. *Tooley,* 12 Mod. 312; *Haring* v. *Kauffman,* 13 N. J. Eq. 397; *Endicott* v. *Maltus,* 1 Stock. 113; *Seyfert* v. *Edison,* 18 Vroom, 428; *Littler* v. *Thompson,* 2 Beav. 129; *Dias* v. *Merle,* 2 Paige, 494; *People* v. *Brower,* 4 id. 405; *Stafford* v. *Brown,* Id. 360; *McNeil* v. *Garratt,* 1 Craig & Phil. 98; *St. John Coll.* v. *Carter,* 4 Myl. & C. 498; *People* v. *Sturtevant,* 9 N. Y. 263; *Hollenbeck* v. *Holland,* 94 id. 342.) In acting as they did in violation of their stipulation, by means of which they had obtained a stay of proceedings pending their appeal, they were guilty of an abuse of the proceedings on appeal, punishable as a civil contempt. (Code Civ. Pro. § 14, subd. 2.) The order directing the writ to issue is to be treated as a mandate for the purpose of determining whether appellants were guilty of disobedience to a lawful mandate. (Code Civ. Pro. §§ 8, 14, 3343.) None of the appellants' objections are well taken. (*F. Bank* v. *Cowen,* 2 Abb. Ct. App. Dec. 38; *Stillwell* v. *Carpenter,* 62 N. Y. 639; *Day* v. *Town of New Lots,* 107 id. 148; *U. S.* v. *Kendall,* 5 Cranch C. C. 385; Code Civ. Pro. §§ 2281, 2284; *People ex rel.* v. *R. & S. L. R. R. Co.,* 14 Hun, 371; 76 N. Y. 294; *People* v. *Spaulding,* 2 Paige, 327; *Lansing* v. *Easton,* 7 id. 364; *Hanley* v. *Bennett,* 4 id. 163; *Erie Co.* v. *Ramsey,* 45 N. Y. 654; *Power* v. *Village of Athens,* 19 Hun, 165.) It is of the utmost importance to the due administration of justice that the order of the Supreme Court should not be reversed unless the appeal is made good beyond a doubt. (*People ex rel.* v. *Pendleton,* 64 N. Y. 621.)

GRAY, J.   The statement of facts has been made thus full, in order that, by exhibiting the various proceedings and acts in some detail, the objections of the appellants may be at once more clearly understood and deprived of any seeming force.   We think that the order of the Supreme Court was warranted by the facts and that that court could not very well have held otherwise with respect to the conduct of the defendants.   That our decision could have been misunderstood, or understood by the appellants as they say it was, is difficult for us to believe.    There was neither uncertainty, nor ambiguity, in the direction by this court for the affirmance of the order of December 7th.   The order that was affirmed directed the issuance of a writ, commanding the defendants to disregard the so-called Mylod return, in issuing their certificate of election, and, instead thereof, to consider only such return as might thereafter be filed containing the signatures of the county clerk, etc., and issued under his seal, and that in their certificate of election the state board should declare that person elected who appeared to have received the greatest number of votes, etc., etc.   The only respect in which we differed from the court below, respecting its order, was in that it required a return from the county board of canvassers to be certified by, or to come from, the county clerk.   For reasons given, under the circumstances we held that to be an unnecessary requirement for the validity of the statement of the county board of the result of their canvass.   So far, therefore, as the order appealed from described the kind of return which might be considered, we changed, or modified, it ; but we affirmed it in every other respect and the order stood unaffected, as a direction to disregard the Mylod return.   With that order approved and affirmed by this court, and containing the judgment of the court upon the right to consider the Mylod return, the appellants should have complied.   Not only did the order, which we made as the result of our consideration of the appeal, call upon the appellants to comply with the requirements of the order for the writ of mandamus,— a compliance which their stipulation should have impelled them to,

without waiting for the issuance of the formal writ; — but the opinion of the court, which was read by (or to) them, informed them, in distinct language, that they could consider any other return, containing the result of the legal action of the county board, and that the return attested by Mylod, though not invalidated by the refusal of the county clerk to sign and certify it, contained, according to uncontradicted allegations, the result of an illegal and erroneous canvass, which would alter the result of the election and which the court should not permit to be canvassed.    There was nothing in the modification in our order, nor suggestion in the language of the opinion, that left the defendants at liberty, legally or morally, to consider the order reversed, or changed, in its direction as to the Mylod return.    They could not consider that return.    They could consider any other return showing the correct result of the canvass.    This was plain from the order and was the clear expression of our opinion.

The appellants object, however, upon other grounds, not related to the question of the meaning of our decision. They object that no writ of mandamus was either granted or served, under the order of December 7th, 1891. That is immaterial, as it concerns the question of whether the defendants have deliberately done something which they knew the court had decided they should not do and had thus neglected, or violated a duty, which the court would have, through the form of a writ prescribed by the statute, enjoined upon, or have commanded them to perform, had the stipulation, which they made upon the granting of the court's order for the writ of mandamus, not prevented the actual issuance of that writ.    What constitutes the contempt here is that the defendants, knowing of the order for the issuance of a peremptory writ of mandamus, have done the very thing which the issuance of the writ was intended to absolutely prevent, and have thus contemned and defeated the will of the court.    It is no new principle that a person may be held guilty of the offense of contempt, for having done an act after the court had decided to enjoin its doing;

although that decision had not been formally and technically carried out, or formulated, into an order or writ. (See *Hull* v. *Thomas*, 3 Edw. Ch. 236, and English cases cited there. Also, the remarks of JOHNSON, J., in *People* v. *Sturtevant* (9 N. Y. at p. 278).

The appellants further say that the order was not one, which it was in the power of the Supreme Court to make at Special Term. It is true that we have held that section 605 of the present Code of Civil Procedure applies, where the object of the proceeding is to restrain state officers, or boards, and requires the injunction order to issue at the General Term. (*People ex rel. Derby* v. *Rice*, 129 N. Y. 461.) It is not, however, for the appellants to question the effect of the order of December 7th, 1891, on any such ground. Their formal stipulation was an acknowledgment of the order and they cannot now be heard to assail the jurisdiction of the court to make it. It was possible that it might have been decided, upon the hearing, or in the course of the appeals from it, that it was improperly issued ; but it was not so decided and it was affirmed by the General Term of the Supreme Court and then, finally, by this court. It stood as a valid order, whether correctly decided or not, and was entitled to the respect and the obedience of all parties upon whom it was to operate. It is no sufficient excuse for the conduct of parties, who have neglected or disobeyed an order of the court after appealing from it and after stipulating to proceed in accordance with the decision of the appellate court, to say that there was no jurisdiction to make such an order. It is true that jurisdiction cannot be conferred by consent of parties ; but a question relating to the authority of a branch of the court to make the particular order may be effectually waived. The Supreme Court had jurisdiction of the parties, although the authority to order the writ of mandamus may have been vested in the General Term. Beyond that consideration, however, it is evident that the offense of the defendants was not only in a disobedience of the order of December 7th, 1891, but, also, in the evasion of their stipulation

and in their disregard of our decision. It is necessary, in the orderly administration of justice, that our will, as that of the courts below, be respected, when communicated to the parties to an action or proceeding. Both with respect to this point and to the preceding point discussed, it may, again, be observed that the defendants, by their formal stipulation, estopped themselves from objecting either to the non-issuance of the writ of mandamus, or to the right of the court to order its issuance. The appellants argue that the remittitur of this court containing our decision had not been filed in the Supreme Court and an order entered making our decision the determination of the Supreme Court; with the result, as they say, that, by our modification of the order, it had ceased to exist as such and there could have been no disobedience of it. We think this a frivolous objection. It would lead to the irrational conclusion that because a decision in the form of an order or a judgment had been appealed from and brought into this court for review, it became of no force, if modified in some parts, though affirmed in essential parts. The power of the court below to enforce its decisions may be suspended, as the result of an appeal; but its decision loses none of its strength pending the appeal and, if modifications are made of its terms, to the extent that it is sustained, it is the same order, to the validity and force of which has been added the sanction of this court.

The appellants object that this was a proceeding to punish for a criminal contempt; whereas the court, determining that there was no willful disobedience on the part of the defendants, has punished them as for a civil contempt. They argue that the relators made their election as to proceeding and are bound by it; so that, if the defendants were not guilty of that willful disobedience, which is required by the Code (Sec. 8, sub-div. 3) to constitute a criminal contempt, they could not be punished at all therein. They base this point upon the notice which the respondents served with the moving papers, after the decision of the General Term; which, reversing the denial of the court at Special Term, ordered that the applica-

1894.] People ex rel. Platt et al. *v.* Rice et al. 263

N. Y. Rep.] Opinion of the Court, per Gray, J.

tion for the order requiring the defendants to show cause should be granted. The notice stated that the respondents would ask for a fine of $250 and an imprisonment of 30 days; the particular punishment authorized by the Code (Sec. 9) to be administered for a criminal contempt. It is a sufficient answer to say that the order to show cause, originally applied for and subsequently ordered to be granted by the General Term, and the moving papers presented the matter to the court in such a way as to leave it open for it to decide, upon all the facts, as to the guilt of the defendants, the nature of the offense and the measure of their punishment. The subsequent service of the notice, specifying the punishment which would be demanded, related to a demand in the event of the failure of the defendants to appear and to show cause as required. It did not take away the power of the court to proceed, as required by the General Term order, and to decide upon the offense. The proceeding was in no wise limited to one for the punishment of the offense of a criminal contempt.

We think the case was one which was comprehended within subdivision 8 of section 14 of the Code. That section conferred the power upon courts of record to punish by fine and imprisonment, or either, a violation of duty, or other misconduct, by which a right or remedy of a party to a civil action, or special proceeding, may be defeated, impaired, impeded, or prejudiced; in any case "where an attachment, or any other proceeding to punish for contempt, has been usually adopted and practiced in a court of record, to enforce a civil remedy * * * and to protect the right of a party." This provision preserved to courts of record the power they had previously possessed to punish, in the interest of a party to the action, as a contempt, an evasion, or a violation of duty, or misconduct, which resulted in defeating or prejudicing the complainant's rights. It was a power formerly exercised by the English Courts of Chancery, and which was continued by the Revised Statutes of this state (2 R. S. 534, 535); as can be seen from the cases of *King* v. *Tooley* (12 Mod. 312); *Skip*

v. *Harwood* (3 Atk. 564); *Hearn* v. *Tennant* (14 Ves. 136); *Hull* v. *Thomas* (3 Edw. Ch. 236), and *People* v. *Sturtevant* (9 N. Y. 278). The court below has determined, as a matter of fact, that in what they did the defendants' acts actually did defeat, impair, impede and prejudice the rights and remedies of the relators, and there can be no doubt that there were undisputed facts, sufficient to warrant the court in finding that the conduct of the defendants amounted to a disobedience, or to a disregard, of the decision made upon the relators' application for a writ of mandamus. In determining that there had not been a willful disobedience, the court took into consideration, as it properly might, the sworn denials of an intentional disrespect and the averments of having acted in good faith, in proceeding upon a construction of the meaning of our decision, as to which they had been advised by counsel and which they believed themselves to be true. With this determination upon the facts, we cannot interfere. The court, nevertheless, was required to and it did impose such punishment as, under the circumstances, fitted the facts of the case. These relators had the interest, which all citizens have in public matters, to compel the performance by public officers of the duties of their office, and to ask the enforcement against them of penalties prescribed for their defaults, or disobedience; but they could not claim to have suffered any actual loss, which the award of a sum sufficient to cover their costs and expenses would not compensate for.

The order appealed from should be affirmed, with costs.

All concur, except Earl and O'Brien, JJ., dissenting.

Order affirmed.