THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDWARD C. STEARNS et al., Respondents, v. WILLIAM MARR, as President of Iron Moulders' Union No. 80, et al., Defendants, and KYRAN POWERS et al., Appellants.

1. CRIMES — WHEN DISOBEDIENCE OF INJUNCTION CONSTITUTES A CRIMINAL CONTEMPT. The willful disobedience of an injunction order by those having knowledge of its existence and terms and who clearly understand the nature of their acts, or by those chargeable with such knowledge and understanding, constitutes a criminal contempt and is properly punishable as such.

2. WHEN VIOLATION BY THOSE NOT PARTIES EO NOMINE AND NOT PERSONALLY SERVED WITH INJUNCTION ORDER IS PUNISHABLE. The fact that those disobeying an injunction were not parties *eo nomine* to the action in which it was granted and were not personally served with the order, constitutes no defense to a proceeding to punish for a criminal contempt, where it expressly restrains not only the parties but those who act under or in connection with a party as attorneys, agents or employees and they, with knowledge of the order and its terms, and acting as the employees of a party, willfully violate it; still less will such a plea be entertained in a case where the mandate was addressed to an unincorporated association and "its each and every member," as well as to all the defendants, their agents, etc., and the violators of the injunction were members of the association as well as employees.

3. COSTS. Costs are not allowable in a proceeding to punish for a criminal contempt.

*People ex rel. Stearns* v. *Marr*, 88 App. Div. 422, modified.

(Argued May 1, 1905; decided May 30, 1905.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 4, 1903, which affirmed an order of Special Term adjudging the appellants herein in contempt of court for violating a temporary injunction.

The facts, so far as material, are stated in the opinion.

*Theodore E. Hancock* and *D. B. Keeler* for appellants. There is no evidence that the appellants Benz and Powers knew the terms and provisions of the order appealed from. (*Bradbury* v. *Bliss*, 23 App. Div. 606; *Davis* v. *Davis*, 83

Hun, 500; *Goldie* v. *Goldie,* 77 App. Div. 12.) Benz and Powers were each adjudged guilty of a criminal contempt of court. This cannot be done, except in case where there is personal service of the injunction or other order alleged to have been disobeyed. (Code Crim. Pro. § 222; Penal Code, § 143; *Koehler* v. *F. & D. Bank,* 14 Civ. Pro. Rep. 71; *Coddington* v. *Webb,* 4 Sandf. 639; *People ex rel.* v. *Oyer & Terminer,* 101 N Y. 245; *Sherwin* v. *People,* 100 N. Y. 351; *People ex rel.* v. *Dwyer,* 90 N. Y. 402; High on Injunctions [3d ed.], § 1452; *Whipple* v. *Hutchinson,* 4 Blatchf. 190.)

*Edgar F. Brown* for respondents. It was not necessary in order to punish the appellants, Powers and Benz, for a criminal contempt of court that the injunction be personally served upon them. (*People ex rel.* v. *Dwyre,* 90 N. Y. 402; *Mayor, etc.,* v. *N. Y. F. Co.,* 8 J. & S. 315; 64 N. Y. 622; *People ex rel.* v. *Brower,* 4 Paige, 405; *Osborne* v. *Tennant,* 14 Vesey, 136; *People ex rel.* v. *Sturtevant,* 9 N. Y. 263; *Rourke* v. *Russell,* 2 Lans. 242; *People ex rel.* v. *Rice,* 80 Hun, 437; 144 N. Y. 249; *R., etc., R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.,* 48 Hun, 190; High on Injunctions, 923.)

VANN, J. During the spring of 1903 the relators employed a large number of workmen in operating their foundry at Syracuse, many of whom were members of the Iron Moulders' Union No. 80, an unincorporated association, organized in the interest of mechanics who were iron moulders by trade. On the 15th of May, 1903, a strike was declared by said union and the most of its members employed by the relators ceased to work and tried to induce those who remained to cease work also, as well as to dissuade others who had not been thus employed from accepting employment at said factory. A picket line was established, threats made, intimidation practiced and finally violence was resorted to. An action was commenced by the relators to recover damages from the union for interfering with their business and to restrain its

1905.]          People ex rel. Stearns *v.* Marr.          465

N. Y. Rep.]          Opinion of the Court, per Vann, J.

members from the use of force, threats or fear in order to keep away those who wished to work. After notice and a hearing a temporary injunction was issued by a justice of the Supreme Court restraining "the Iron Moulders' Union, No. 80, its each and every member, said defendants and each of them, their agents, servants, representatives and coadjutors and all persons connected with them or either of them * * * from assaulting, menacing, threatening or intimidating, whether by manner, attitude, speech, numbers or other act or means, the men and workmen in plaintiffs' employ, or who come to plaintiffs for employment, and from interfering with said plaintiffs' business by any unlawful means for the purpose of preventing any person or persons who now are or may hereafter be in plaintiffs' employment from continuing therein, or who being desirous of entering said employment from doing so or continuing therein."

Subsequently a motion was made to punish John Lillis, Kyran Powers, Otto Benz and Michael Strozik for contempt in violating said injunction, and upon the hearing a referee was appointed to take the evidence of the parties and their witnesses and report the facts with his opinion. After taking much testimony and upon due deliberation the referee reported that Lillis, Benz and Powers were guilty of contempt in violating said order, but that Strozik, owing to his ignorance of the English language, did not know enough about the terms of the injunction to warrant his punishment. The referee found that the injunction had been served personally upon said Lillis, who was a defendant in the action, and that Benz and Powers, who were not defendants and upon whom the injunction had not been served, knew of the existence and the terms thereof when they disobeyed it. The report of the referee was confirmed by the Special Term and the three persons named were adjudged guilty of contempt and punished by fine and imprisonment. An appeal was taken to the Appellate Division, where the order of the Special Term was affirmed unanimously as to Powers and Lillis, but one of the justices dissented as to Benz upon the ground that the evi-

dence did not " satisfactorily establish that he was guilty of contempt."

An act in willful contempt of a court of justice or its process is an offense against the People of the state. Government by law cannot exist without courts and courts cannot enforce the law unless disobedience of their orders is properly punished. The wrong done to a party by the violation of an order made by a court for his protection is of less importance than the wrong done to the public by obstructing the course of justice and bringing dishonor upon the law itself. This is not a case of mere civil contempt where a fine is imposed mainly to indemnify a party for a private injury, and incidentally to vindicate the authority of the court as an agency of public justice. We are now dealing with a criminal contempt, not in the interest of a party merely, but in the interest of the public, to compel obedience to a lawful mandate of the Supreme Court and to punish resistance thereto as in the nature of a crime. There are three parties to every proceeding to punish for a criminal contempt, the plaintiff, the defendant and the People. If a fine is imposed it goes into the public treasury when paid, and is for " punishment rather than indemnity, and if imprisonment is added, it is in the interest of public justice and purely as a penalty and not at all as a means of securing indemnity to an individual." (*People ex rel. Munsell* v. *Court of Oyer & Terminer*, 101 N. Y. 245, 248.) While the court may be set in motion by a person who has been injured, it acts to punish the wrong to the public rather than to redress the private injury.

All of the appellants knew that the injunction had been issued, one of them because it was personally served upon him and the others because they were present at a meeting held by the strikers when the existence and contents of the order were stated and advice was given by one of the leaders to keep within the law. There was also evidence tending to show that they discussed the terms of the injunction with different persons, talked about what they could and could not do in view of its command, stated who their attorney was,

when the motion to vacate would be heard and the like. Neither in their answering affidavits nor in their testimony as witnesses before the referee did they deny that they knew of the existence and the terms of the injunction. They confined their testimony mainly to a denial that they had used threats or violence and upon this question there was a conflict in the evidence. The referee found that on the 2d of July, 1903, Ludwig Werner, an employee of the plaintiffs, as he left their factory, was assaulted by some of the strikers. He went across the street and was followed by Benz and others. In a threatening manner and with intent to intimidate Werner and prevent him from continuing in the employment of the plaintiffs, Benz said to him: "If you go into that shop again we will kill you." When the order to show cause was served Benz was told that he frightened Werner "pretty badly," and he replied, "That is what I wanted to do; I guess I have a right to talk, Stearns can't stop me from talking."

On the 26th of June, 1903, Albert Thurston, who was in the employ of the plaintiffs, left their factory when Powers took hold of his arm and said: "If you come back here again, you will get your punching."

On July 3rd, as said Thurston was entering the factory to work he was again stopped by Powers, who said: "If you go down there to work you will get your God damned head plunked. You keep out of here." On the same day at about five o'clock in the afternoon as Thurston and one Ernest Seib were leaving the factory they were met by some strikers, one of whom asked if they intended to keep on working for Stearns. They said they did and were thereupon assaulted, beaten and kicked by seven or eight strikers. Powers and Lillis were present and both incited the crowd to attack Thurston, Lillis saying, "Now is your time," while Powers said, "Slug him one." The referee further found that these acts were done for the purpose of intimidating Thurston and Seib and preventing them from continuing to work for the plaintiffs. These facts find ample support in the evidence and after the concurrent action of the courts below they are

not open to review by this court. We are compelled to accept them as they were found by the referee and affirmed by the Supreme Court both at Special Term and in the Appellate Division.

The injunction permitted the use of all peaceful methods to induce workmen to leave the plaintiffs and join the strikers, but it forbade force, threats and intimidation. Both Benz and Powers used threats and Powers and Lillis instigated an assault. " A person who directly or indirectly counsels, commands, induces or procures another to commit" an assault is guilty of assault himself and subject to punishment as a principal. (Penal Code, § 29.) When peaceable persuasion ended and threats and force began, both the command of the injunction and the command of the law, independent of the injunction, were violated. This is a land of free speech, but freedom of speech does not permit the use of threats when an injunction is out against it. While persuasion is lawful, threats are not and it is dangerous to experiment in order to see how near one may come to a violation of an injunction without actually violating it. The command of the People, speaking through their Supreme Court, is not to be trifled with. (High on Injunctions [3d ed.], § 1427.)

It is insisted, however, in behalf of Benz and Powers that they cannot be adjudged guilty of criminal contempt, because they were not parties to the action in which the injunction was issued. This position is unsound. An injunction not only restrains the parties to the action in which it was granted, but also, when so drawn, those who act under or in connection with a party, as attorneys, agents or employees. No person with knowledge of the terms of an injunction, even if not a party himself, can aid or co-operate with a party in doing the prohibited act without incurring the penalty prescribed by statute. Otherwise, in order to make an injunction effective it would be necessary to join every person who could become an agent of a party in violating it. The law is not so tender of those who defy its power and trample upon its command as to exempt them from punishment because

they were not named as defendants in the action. (*People ex rel. Negus* v. *Dwyer*, 90 N. Y. 402 ; *People ex rel. Mayor, etc., of N. Y.* v. *Pendleton*, 64 N. Y. 622; *People ex rel. Davis* v. *Sturtevant*, 9 N. Y. 263 ; *Rorke* v. *Russell*, 2 Lans. 242; *Rochester, H. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 48 Hun, 190.) The Iron Moulders' Union was a party to the action and the mandate was addressed not only to it and "its each and every member," but to all the defendants, their agents, representatives and coadjutors, as well as to those connected with them. The appellants were members of the union, were employed by it to act as pickets around the plaintiffs' plant, and each was paid at the rate of a dollar a day for his services in that capacity. They were parties to the injunction because they were mentioned therein as members of the union. They were the agents and employees of a party, *eo nomine*, engaged in doing its work and subject to the same punishment as if they had all been formally named as parties defendant. In a recent case, where the agents and servants of a party were punished for willful disobedience of an injunction order, although they were not parties to the action, Judge O'BRIEN, speaking for the court, said : "The appellants were the agents and servants of the defendant. The restraining words of the order included them as well as their employer. By the service of it upon them, they were informed that a suit had been commenced to perpetually restrain the production of the play, and that the court had enjoined the production thereof in the meantime and during the pendency of the action. The willful disobedience of the order of the court served under such circumstances is a contempt of its authority, and this result is not relieved by the circumstance that the summons in the action had not yet been served upon the defendant when the order was disobeyed." (*Daly* v. *Amberg*, 126 N. Y. 490, 496.)

In *Rigas* v. *Livingston* (178 N. Y. 20, 24) Judge CULLEN said : "It is true that persons not parties to the action may be bound by an injunction if they have knowledge of it, provided they are servants or agents of the defendants or act in

collusion or combination with them. * * * Authorities illustrating the rule might be cited to an indefinite extent, but the underlying principle in all cases of this class, on which is founded the power of the court to punish for the violation of its mandate persons not parties to the action, is that the parties so punished were acting either as agents or servants of the defendants or in combination or collusion with them, or in assertion of their rights or claims."

It is further insisted in behalf of the same appellants that they cannot be lawfully punished for criminal contempt, because the injunction order was not personally served upon them. The rule upon the subject is well settled. "This court has upheld proceedings in the Supreme Court, punishing parties for contempt in violating an injunction who had knowledge of it, though not served, and also the agents and attorneys of parties having like knowledge of the granting of the order, though it was imperfectly or irregularly served." (*Daly* v. *Amberg*, 126 N. Y. 490, 496, citing *Abell* v. *N. Y., L. & W. R. R. Co.*, 18 Wkly. Dig. 554; affirmed, 100 N. Y. 634; *Koehler* v. *Farmers and Drovers' National Bank*, 6 N. Y. Supp. 470; affirmed, 117 N. Y. 661. See, also, *People ex rel. Platt* v. *Rice*, 80 Hun, 437; 144 N. Y. 249; *Hull* v. *Thomas*, 3 Edw. Ch. 236; *People ex rel. Morrison* v. *Brower*, 4 Paige, 405; *Livingston* v. *Swift*, 23 How. Pr. 1; *Hearn* v. *Tennant*, 14 Ves. Jr. 136.) In the case last cited the defendant and his attorney were committed for contempt in violating an order because they were present in court when the motion for an injunction was made, although they left before the decision was announced or the order signed. Lord Eldon said : "If these parties by their attendance in court were apprised that there was an order, that is sufficient; and I can not attend to a distinction so thin, as that persons standing here until the moment the Lord Chancellor is about to pronounce the order, which from all that passed they must know will be pronounced, can by getting out of the Hall at this instant avoid all the consequences."

While there is a distinction in the nature of civil and crimi-

nal contempts, there is but slight difference in the procedure to punish and no requirement peculiar to either as to the personal service of the order, as distinguished from the actual knowledge of its existence and contents, however acquired. "As it respects disobedience to the order of a court, the sole difference appears to be that a ' willful' disobedience is a criminal contempt, while a mere disobedience, by which the right of a party to an action is defeated or hindered, is treated otherwise." (*People ex rel. Negus* v. *Dwyer*, 90 N. Y. 402; *King* v. *Barnes*, 113 N. Y. 476, 480 ; Code Civ. Pro. §§ 8, 14.) The primary object of the one is to protect private rights and of the other to maintain the dignity of the court and vindicate the authority of law. As each of the appellants knew of the existence of the injunction and its terms and clearly understood the nature of his acts, he was properly adjudged guilty of a criminal contempt, for his willful disobedience tended to cast discredit upon the administration of justice.

The Special Term awarded no costs against the appellants, but the Appellate Division inadvertently allowed costs against them. While the statute authorizes the imposition of costs in a proceeding to punish for a civil contempt, there is no such authority in a case of criminal contempt. (*People ex rel. New York Society for Prevention of Cruelty to Children* v. *Gilmore*, 88 N. Y. 626 ; *Boon* v. *McGucken*, 67 Hun, 251, and cases therein cited.)

The order appealed from should be so modified as to strike therefrom the allowance of costs and in all other respects affirmed.

Cullen, Ch. J., Gray, O'Brien, Bartlett, Haight and Werner, JJ., concur.

Ordered accordingly.