(162 App. Div. 337)

PEOPLE ex rel. ROACHE v. HANBURY.

(Supreme Court, Appellate Division, Second Department.    May 15, 1914.)

1. EXECUTION (§ 418*)—SUPPLEMENTARY PROCEEDINGS—REFUSAL OF WITNESS TO TESTIFY—CONTEMPT PROCEEDINGS—EVIDENCE.

In criminal contempt proceedings against a witness who had refused to answer certain questions in proceedings supplementary to execution, evidence *held* sufficient to show that the witness had been directed to answer the questions, and that his refusal to do so was willful and deliberate, even though there was no written order requiring him to answer each specific question.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 1201; Dec. Dig. § 418.*]

2. EXECUTION (§ 418*)—SUPPLEMENTARY PROCEEDING—REFUSAL OF WITNESS TO TESTIFY—LEGALITY OF QUESTIONS.

Where a witness, who was not a party, in proceedings supplementary to execution, in which the questions were not put to him directly in the presence of the court, was charged with criminal contempt under Code Civ. Proc. § 2457, for refusing to answer, he may, under Judiciary Law (Consol. Laws, c. 30) § 750, subd. 5, giving courts power to punish a witness for refusing to answer any legal question or proper interrogatory, question the legality or pertinency of the questions asked, since he could not raise that question in the supplementary proceedings, and otherwise the statute which provided for his punishment for contempt out of the presence of the court, without full opportunity to be heard in his defense, would deprive him of his liberty or property without due process of law, contrary to Const. art. 1, § 6.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 1201; Dec. Dig. § 418.*]

3. EXECUTION (§ 397*)—SUPPLEMENTARY PROCEEDINGS—EXAMINATION OF WITNESS—SCOPE OF INQUIRY.

Where it appeared in proceedings supplementary to execution that M. had received considerable property from the judgment debtor, which she managed and sold under the debtor's directions, and that some of his money had been deposited in a trust company in her name, checks on which deposits were signed by her in blank, to be filled out by the debtor, questions asked an officer of the trust company as to his knowledge of a check drawn to M.'s order in payment for stock sold under the debtor's advice, which check was indorsed by M., but collected by the debtor, were legal and pertinent to the inquiry, since proceedings of that kind are necessarily inquisitorial and the questions may take a wide range.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1137, 1149; Dec. Dig. § 397.*]

4. EXECUTION (§ 418*)—SUPPLEMENTARY PROCEEDINGS—CONTEMPT—PUNISHMENT—POWER OF COURT.

Where a contempt has been committed by a witness in refusing to answer questions put to him in proceedings supplementary to execution under the direction of the Special Term, the Special Term, and not the Appellate Division, is to determine whether the punishment should be for a criminal or a civil contempt.

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 1201; Dec. Dig. § 418.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

Contempt proceedings by the People, upon the relation of J. Benedict Roache against Harry A. Hanbury. From an order of the Special Term (145 N. Y. Supp. 483), adjudging the defendant guilty of contempt and imposing punishment, the defendant appeals. Affirmed.

See, also, 146 N. Y. Supp. 1108; 147 N. Y. Supp. 1134.

Argued before BURR, THOMAS, CARR, and RICH, JJ.

George W. Sickels, of Brooklyn, for appellant.

Charles L. Craig, of New York City, for respondent.

BURR, J. Harry A. Hanbury has been adjudged guilty of criminal contempt of court in refusing to answer certain questions addressed to him while being examined as a witness in proceedings supplementary to execution, instituted by J. Benedict Roache, as assignee of the executors of Russell Sage, deceased, judgment creditor, against Patrick H. Flynn, judgment debtor. Appealing from such order, he contends: First, that there was no ruling or direction given that he should answer such questions; second, that the questions so addressed to him were "improper, illegal, and impertinent"; third, that because such was the case, the court was without power to commit him·for contempt as it has done.

[1] The question of fact arising in connection with his first contention has been decided adversely thereto, and the evidence abundantly sustains such finding. While under examination as such witness, appellant was asked the question, "Specifically, do you know anything about what became of a check drawn by the Hamilton Trust Company in favor of Mrs. Helena I. Meht, for $24,037.96?" His reply was, "I decline to answer that question." To the next question, "Upon what ground?" he answered, "I don't think you are entitled to know anything about it." Then being asked, "Did you have anything to do with that check drawn by the Hamilton Trust Company for $24,037.-96, to the order of Helena I. Meht?" again he refused to answer. This was followed by more than 20 questions relating to said check, the proceeds of it, who received such proceeds, and as to conversations respecting the ·same with the judgment creditor and the said Helena I. Meht. Each of these questions he refused to answer, in many instances accompanying his refusal with the statement, "That is none of your business."

The parties then appeared before Mr. Justice Manning, sitting at the Special Term of the Supreme Court, and the following occurred:

Counsel for the judgment creditor stated: "We have a supplementary proceeding here, and the witness Hanbury has refused to answer certain questions." Argument was then had by Mr. Craig on behalf of the judgment creditor and receiver, and Mr. Van Thun on behalf of the judgment debtor, and Mr. Justice Manning made the following direction: "I instruct Mr. Hanbury to disclose the facts about this check to which you refer." Hanbury's examination was then resumed, and counsel for the judgment creditor requested the stenographer to go back to the unanswered questions and repeat them to the witness and take the witness' answer to each question. The first of the questions hereinbefore recited was then repeated, and the witness replied: "Without any disrespect to the court, I still refuse to answer." Several of the questions previously asked were then repeated in order. He refused to an-

swer either of them, in one instance stating: "Because it is Mrs. Meht's private affairs, and none of the receiver's business." After five questions had been thus repeated and answers refused, appellant was asked: "You refuse to answer in view of the instructions of Judge Manning?" He replied: "I have given the answer without any disrespect to the court. It is Mrs. Meht's private affairs, and the court is in error, in my opinion, and I must decline to answer." Counsel then continued to repeat the remaining questions previously asked the witness, and in each instance an answer was refused; in one instance the witness adding: "My answer to all these questions is that, without any disrespect to the court as to the ruling on this point, this being Mrs. Meht's private affairs, I am not called upon to divulge any of her private business, and I will not answer the questions." To the next question, "You do that notwithstanding the ruling of Judge Manning?" he replied, "You have my answer."

After each of the questions previously asked had been repeated to the witness, and had been met with a like refusal, the parties again appeared before Mr. Justice Manning, and the following occurred:

Counsel for judgment creditor: "The witness Hanbury has declined to answer the questions in spite of your honor's ruling, and puts his refusal on the ground that he thinks your honor is in error. I think I ought to submit it to you so that we may get some speedy relief."

Mr. Justice Manning: "The only relief I can give is to order Mr. Hanbury to answer these questions, and if he refuses to answer then, I will commit him for not answering." The examination was then resumed. The witness was asked: "Do you still adhere to your refusal to answer any of this line of question? A. Ask me whatever you desire, and I will give you my answer. Q. For what purpose did you place your indorsement upon that check for $24,037.96? A. I decline to answer. Q. Will you answer any of the questions which you previously refused to answer? A. I have answered every one of those questions and reanswered them and given my reasons for such as I decline to answer. Q. You won't answer any questions you decline [sic] to answer? A. Those that I declined I don't propose to answer now, for the same reasons I have given."

When brought before the court upon a writ of attachment, in response to written interrogatories then submitted, appellant made written answers acknowledging the accuracy of this record. In the face of such a record and of such admissions, it is idle to contend that the witness did not fully understand that he was directed to answer these questions, and that his refusal to obey such direction was willful and deliberate.

As was said in Lathrop v. Clapp, 40 N. Y. 328, on page 336 (100 Am. Dec. 493):

"There is no sense in requiring a special order to be reduced to writing requiring the witness to answer every question which he may see fit to refuse, and then to go through the formality of serving the order on the witness."

[2] We proceed now to consideration of the power of the court to punish him for contempt for such refusal. "A person who refuses, or without sufficient excuse neglects, to obey an order of a judge * * * made pursuant to * * * any * * * provision of this article" (Code Civ. Proc., c. 17, tit. 12; art. 1, which relates to supplementary proceedings, including examination of witnesses thereunder), "and duly served upon him, or an oral direction, given directly to him by a judge * * * in the course of the special proceeding; * * * may be punished * * * as for a contempt" (Code Civ. Proc., §

2457). If the appellant had been a party to the special proceeding in which he was being examined, we might not be called upon to determine, upon an application to punish him as for a criminal contempt, whether the questions addressed to him, and which he refused to answer, were "legal" and "pertinent." The learned justice before whom the examination was being conducted had jurisdiction to determine in respect thereto.

"His power to decide does not depend upon the correctness of his decision. Jurisdiction is entirely independent of the manner of its exercise. It involves the power to decide either way upon the facts presented to the court." People ex rel. Gaynor v. McKane, 78 Hun, 154, 28 N. Y. Supp. 981; People v. Murray Hill Bank, 10 App. Div. 328, 41 N. Y. Supp. 804; Bachman v. Harrington, 184 N. Y. 458, on page 461, 77 N. E. 657.

"If the court erred in its conclusion the remedy was by appeal, not by disobeying its mandate." People ex rel. Negus v. Dwyer, 90 N. Y. 402.

But in this case the party adjudged guilty of criminal contempt was not a party to the proceeding in connection with which the offense was committed. He was not entitled to appear by counsel therein, or to be heard upon the legality or propriety of the questions addressed to him, at least when he was not invoking a constitutional privilege, as he was not in this case. The judiciary law, in the portion thereof relating to criminal contempts, provides, among other things, that:

"A court of record has power to punish for a criminal contempt, a person guilty of either of the following acts, and no others: * * * Contumacious and unlawful refusal to be sworn as a witness; or, after being sworn, to answer any legal and proper interrogatory." Consolidated Laws, c. 30 (Laws of 1909, c. 35), § 750, subd. 5.

A statute which provided for commitment for criminal contempt not committed in the immediate presence of the court, without notice to the party accused thereof and an opportunity to be heard in his defense, would violate his constitutional rights, since it might deprive him of "liberty or property without due process of law." Constitution, art. 1, § 6; Matter of Barnes, 204 N. Y. 108, 97 N. E. 508. In construing the provisions of section 856 of the Code of Civil Procedure in the Barnes Case, supra, which section contains language similar to that in the judiciary law, a majority of the court (Judge Werner, with whom Judges Hiscock, Chase, Collin, and Bartlett concurred) found the requirements of that section that a witness' refusal to answer be "without reasonable cause" questions "legal and pertinent" necessarily implied notice to the accused and an opportunity to be heard in respect to the same, and thereupon in that case the court proceeded to consider the legality and pertinency of the questions addressed to him. For the reason hereinbefore stated, it may be that as to a witness such legality and pertinency are the subject of inquiry upon a proceeding to punish him for contempt, since there is the first opportunity which is presented to him as a party to any proceeding to be heard in respect thereto. In thus construing the statute, however, we expressly limit it to the facts here presented. Whether a similar rule would obtain if the recalcitrant witness was a party to the special proceeding in which the examination was had, or if the commitment were a summary one for contempt committed in the immediate pres-

ence of the court (and this was not such a proceeding), may be reserved for determination until the question directly arises. †

[3] Considering, then, the final question, we are of opinion that the questions addressed to the witness with reference to said check, its proceeds, his connection therewith, and his disposition of such proceeds, were legal and pertinent to the inquiry then being made. The purpose and object of the inquiry was to discover property of Patrick H. Flynn, a judgment debtor. Transactions of Helena I. Meht with the judgment debtor were necessarily and properly the subject of inquiry to determine whether in fact certain property standing in her name was really property which belonged to him, and every question tending to disclose her relation thereto was legal and pertinent. According to her testimony, as well as that of the judgment debtor, it would seem that he controlled all her acts; she implicitly followed all of his directions, and lent the use of her name to any transaction in which he saw fit to ask her to engage. Substantially all of the property now standing in her name was in the first instance transferred to her by the judgment debtor. Such property so placed in her name was thereafter sold, exchanged, or transferred at his desire. There is at least ground for the contention that a deposit account in the Hamilton Trust Company, carried in the name of Helena I. Meht, is an account into which many thousands of dollars of the judgment debtor's money might be traced. According to both his testimony and hers, the majority of the checks on this account are signed in blank by her, delivered to him, and filled out by him at his pleasure. As to the check in question, it appears that, although drawn to the order of Helena I. Meht, Hanbury received the proceeds thereof in cash from the paying teller of the Hamilton Trust Company, and that such proceeds resulted from the sale of Union Pacific stock carried in a loan made by the Hamilton Trust Company nominally to her. It also appeared that this stock was purchased as a reinvestment of the proceeds of the sale of stock of the Brooklyn Rapid Transit Company, likewise carried in a loan made by the Hamilton Trust Company, the actual date of which purchase was in July, 1910. Flynn admitted that this stock had been sold under his "advice," and it appeared upon an examination of the officers of the trust company that in some transactions, had by it nominally with her, the proceeds of such transactions had been turned over for the judgment debtor's account, and used to discharge obligations of the judgment debtor. The check in question, after being first indorsed by Helena I. Meht, was collected by the witness. It was quite pertinent, therefore, to thoroughly exhaust the knowledge of the witness with regard to the proceeds of this check, to determine not only his disposition of the same, but the actual ownership thereof. The very object of supplementary proceedings is to ferret out fraudulent conveyances and concealments of property. In Lathrop v. Clapp, supra, the court say:

"Its primary object, undoubtedly, was to give the creditor the benefits of a discovery, as to the debtor's property; and in that respect, the Legislature has not been guilty of the folly of saying, You may have a discovery, but must not inquire into any fraudulent conveyances, or transfers of property, or any secret or fraudulent trusts created. * * * The creditor has a

right to be informed fully in regard to his debtor's property, and he ought not to be regarded as meddlesome or impertinent in seeking honestly for such information." Supplementary "proceedings are eminently inquisitorial. They were meant to be so by the Legislature. * * * The examination is therefore allowed to take a wide and searching range, both as to the parties to the proceedings, and to the witnesses." Perkins v. Kendall, 3 Civ. Proc. R. 240, note at page 247.

"An exhaustive examination is authorized to enable the judgment creditor to determine whether or not it is safe to levy on any property in the possession of the witness as property of the judgment debtor in disregard of an assignment or transfer thereof claimed to have been fraudulently made or otherwise to be invalid, or whether it is advisable to apply for the appointment of a receiver to maintain an action to recover the property or to set aside a transfer thereof." Matter of First Nat. Bank v. Gow. No. 2, 139 App. Div. 582, 124 N. Y. Supp. 454.

[4] It was for the court at Special Term to determine whether, a contempt having been committed, the punishment should be for a civil or a criminal contempt. People ex rel. Platt v. Rice, 80 Hun, 437, 30 N. Y. Supp. 457, affirmed 144 N. Y. 249, 39 N. E. 88.✗

We think that the order appealed from should be affirmed, with $10 costs and disbursements. All concur.　　　　　　　　　　　•