OPINION OF THE COURT
James B. Kane, J.
These are related actions involving Erie County’s housing of prisoners who are the responsibility of the State.
The first action seeks damages and a finding of contempt for failure to comply with an August 17, 1987 decision and an October 9, 1987 judgment of this court.
In pertinent part, the judgment provided: "It is declared that Respondents have a statutory duty to accept custody of any inmate confined in the Erie County Holding Center who has been judicially or administratively ordered committed to the custody of the New York State Department of Correctional Services, provided that any processing necessary to make him/ her 'state-ready’ has been completed”.
The judgment further provided that: "[W]hen and to the extent that the total population of the Erie County Holding Center exceeds five hundred inmates, Respondents are hereby directed to remove within ten (10) days as many 'state ready’ inmates as is necessary to bring the said facility’s total inmate population under 500 inmates.”
This court held two days of hearings on this application for contempt and damages and heard from nine witnesses.
In McCain v Dinkins (84 NY2d 216, 226 [1994]), the Court of Appeals held: "To sustain a civil contempt, a lawful judicial order expressing an unequivocal mandate must have been in effect and disobeyed (see, e.g., Pereira v Pereira, 35 NY2d 301, *631 308; Matter of Spector v Allen, 281 NY 251, 259; Ketchum v Edwards, 153 NY 534, 539; Coan v Coan, 86 AD2d 640, 641, appeal dismissed 56 NY2d 804). Moreover, the party to be held in contempt must have had knowledge of the order, although it is not necessary that the order actually have been served upon the party (e.g., People ex rel. Stearns v Marr, 181 NY 463, 470, supra). In addition, prejudice to the rights of a party to the litigation must be demonstrated (see, Judiciary Law § 753 [A]; Matter of McCormick v Axelrod, 59 NY2d 574, supra).”
On this record, it is apparent that this court’s clear, unequivocal mandate to remove all State-ready inmates within 10 days when the population of the Holding Center exceeded 500 inmates was not obeyed.
The population of the Holding Center was never under 500 during the period at issue, October 7, 1987 through September 30,1996. During that time, there were 2,137 State-ready prisoners held in Erie County longer than 10 days, for periods varying from one extra day to 68 extra days. The number of such days multiplied by the number of inmates held in excess of 10 days, termed "liability days”, equals 27,188.
Respondents do not deny these facts. Indeed, the "liability days” figures were provided by the State and testified to by officials of the respondent Department of Criminal Justice Services, Jack Alexander, Director of the Office of Classification and Movement, and Anthony Annucci, Deputy Commissioner Counsel.
Instead, respondents cite the overcrowding in their own facilities as their excuse for noncompliance. Further, they detail their efforts to house a burgeoning inmate population.
This court finds that the excuses offered by respondents are legally insufficient to justify noncompliance. (Matter of Ayers v Coughlin, 72 NY2d 346; McCain v Dinkins, supra.) The disobedience of this court’s order is established.
The court notes that the statutory duty of respondents and so found by this court has not changed since the judgment was entered. (CPL 430.20 [1]; Penal Law § 70.20.) In fact, since the time of the decision and judgment, the State’s duty to accept "State-ready” prisoners regard has been emphasized by the Court of Appeals. (Matter of Dooley v Coughlin, 72 NY2d 984; Matter of Ayers v Coughlin, supra.)
There is no doubt that the State officials were aware of this court’s order.
It is also clear that petitioners’ rights have been substantially prejudiced as a result of the State’s inaction.
*632 First, petitioner County of Erie has been prejudiced financially. While the State reimbursed the County for each liability day, these amounts failed to meet the County’s actual costs to house the inmates, both before and after the 10-day period began.
This court credits the testimony of Joseph Cercone, a Senior Budget Examiner for the County whose estimates for the daily cost, by year, of maintaining a prisoner in the Erie County Holding Center are as follows: 1988 — $82; 1989 — $92; 1990— $87; 1991 — $97; 1992 — $94; 1993 — $96; 1994 — $94; 1995 — $87 and 1996 — $84.
These amounts contrast with the $40 per liability day reimbursement paid to the County by the State until March 31, 1992, which reimbursement was reduced to $34 thereafter.
Second, Erie County’s facilities are overcrowded. The testimony of Mr. Keane, and John J. Dray, Superintendent of the Holding Center, indicated the extent of the problem and that it is exacerbated by the prisoners who are the State’s responsibility. This overcrowding has led to litigation in United States District Court, in which a class has been certified, seeking money damages and injunctive relief due to conditions in the Holding Center. Erie County has been ordered to relieve the overcrowding.
As it is clear that the judgment herein is unequivocal, that respondents were aware of it, have failed to comply and that Erie County has been prejudiced by such noncompliance, it is this court’s finding that respondents are in contempt of this court’s judgment of October 9, 1987.
In Matter of Jackson v New York State Dept. of Correctional Servs. (173 AD2d 467), the Second Department affirmed Westchester County Supreme Court’s finding of contempt against respondents in a nearly identical situation. That Court also mentioned the jeopardy that County found itself in as a result of Federal mandates. This court notes that in that case, respondents settled the damages portion of the contempt motion by agreeing to pay Westchester County the additional sum of $111 per liability day.
Very recently, Justice Harold Hughes held the Commissioner of Department of Correctional Services in contempt in the same circumstances as have been proven herein. (Guest v Goord, Sup Ct, Albany County, Dec. 18, 1996, Hughes, J., index No. 5767-87.)
Respondents have raised the defense of laches. It is this court’s conclusion that rather than sitting on their rights, the *633 County’s representatives were in constant contact with respondents in an effort to move these prisoners out as quickly as possible. The testimony of Mr. Keane and Mr. Dray amply supports this conclusion.
With respect to a penalty for such contempt, Judiciary Law § 773 prescribes a fine in the amount of actual damages sustained by the petitioner. (Matter of Jackson v New York State Dept. of Correctional Servs., supra.)
Therefore, this court imposes a fine of $1,459,182 which is the difference between the reimbursement amount and the actual cost of housing prisoners for each liability day.
Turning to the second matter herein, respondent Division of Parole’s motion to dismiss is granted. It is apparent that, contrary to the County’s allegations, housing of alleged parole violators, after arrest, is the County’s responsibility. (County of Nassau v Cuomo, 69 NY2d 737; Executive Law § 259-i [3] [a] [i].)
In accordance with this decision, it is hereby ordered, that this court’s decision of August 17, 1987 and its judgment implementing such decision of October 9, 1987 remain in full force and effect; and it is further ordered that, due to respondents’ contempt of such order, respondents are to pay the sum of $1,459,182 to petitioner County of Erie within 60 days of notice of entry of this order; and it is finally, ordered that the second action herein is dismissed.