The People of the State of New York ex rel. Empire Leasing Company, Inc., Appellant, *v.* Mecca Realty Company and Others, Respondents.

First Department, November 3, 1916.

Injunction — order enjoining raising or interfering with sky sign — parties affected — criminal contempt — violation of judge's order.

An injunction order, although a judge's order in form, is, in effect, under sections 606 and 3343, subdivision 2, of the Code of Civil Procedure, an order of the court, and willful disobedience thereof may be punished as a criminal contempt under subdivision 3 of section 750 of the Judiciary Law.

An injunction not only restrains the parties to the action in which it is granted, but also, when so drawn, those who act under or in connection with a party as agents, servants or employees. No person with a knowledge of the terms of an injunction, even if not a party himself, can act or co-operate with a party in aiding the prohibited act without incurring the penalty prescribed by statute.

Under an injunction order restraining the lessee of a building and the sublessee of the roof thereof, their agents, servants and employees, from

raising, altering or interfering with a certain sky sign upon the roof, all the parties mentioned who had knowledge of the terms of the injunction order and had been served therewith, but still persisted in disobeying it, may be punished for a criminal contempt.

APPEAL by the relator, Empire Leasing Company, Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 27th day of March, 1916, denying relator's motion to punish the defendants for contempt.

*Walter H. Bond*, for the appellant.

*Jesse S. Epstein* [*Hitchings & Burdick* with him on the brief], for the respondents.

DOWLING, J.:

This proceeding is brought to punish defendants for criminal contempt of court for the willful violation and disobedience of an injunction contained in an order to show cause, bearing date February 7, 1916, whereby the Mecca Realty Company and the O. J. Gude Company, their agents, servants and employees, were enjoined and restrained from raising, altering or interfering with a certain sky sign upon the roof of premises known as the Mecca Building, situate at the northeast corner of Forty-eighth street and Broadway in the city of New York. Said injunction order was issued in an action in the Supreme Court, New York county, wherein the Empire Leasing Company, Inc., was plaintiff, and the Mecca Realty Company and the O. J. Gude Company were defendants, and was signed by Hon. THOMAS F. DONNELLY, a justice of the said court. The motion to punish for criminal contempt was based on affidavits showing that despite the injunction order, and in willful violation and disobedience thereof, the sky sign in question had been raised, and work proceeded thereupon to raise it from its then height of 71 feet to its proposed full and unlawful height of 135 feet 10 inches, with the then existing width of 104 feet, upon the completion of which both the Mecca Company and the Gude Company would receive a revenue of nearly $1,000 per month,

First Department, November, 1916. [Vol. 174.

and that as only some ten days of work remained to be done upon it by the contractors, the injunction order was deliberately defied and the sign completed. The Mecca Realty Company was the lessee of the entire Mecca Building (a ten-story structure) for the term of ninety-nine years. The O. J. Gude Company was the sublessee of the roof of said building, with all sign privileges thereon, for a period of ten years. The Belmont Iron Works was the contractor with the O. J. Gude Company for furnishing the materials and the erection of the sign, and had a subcontract for the erection thereof with the Mayes Construction Company. S. S. Albert is New York manager of the Belmont Iron Works, and Edward H. Mayes is the president of the Mayes Construction Company. Jesse Froelich and Louis Mansbach are vice-president and treasurer, respectively, of the Mecca Realty Company. Oscar J. Gude, W. F. Wentz and Albert Gans are, respectively, president, vice-president and third vice-president of the O. J. Gude Company. From the order denying the motion to punish for contempt this appeal is taken.

By their supplemental brief respondents have raised for the first time the point that as this is a proceeding to punish for a criminal contempt, it comes within the provisions of section 750 of the Judiciary Law (Consol. Laws, chap. 30; Laws of 1909, chap. 35) defining criminal contempts and authorizing the punishment therefor, and that the only subdivision applicable thereto is the 3d, whereby the court is empowered to punish "Wilful disobedience to its lawful mandate." But respondents urge that the injunction order signed by Mr. Justice DONNELLY being a judge's order and not an order of the court, no criminal contempt can be predicated on disobedience thereto. It is quite true that under the subdivision of section 750 heretofore quoted the court has power to punish as for a criminal contempt only willful disobedience to its lawful mandate. But the Code of Civil Procedure (§ 606) provides that "Except where it is otherwise specially prescribed by law, an injunction order may be granted by the court in which the action is brought, or by a judge thereof, or by any county judge; and where it is granted by a judge, it may be enforced as the order of the court." Therefore, the justice granting

the injunction order having had authority and power so to do, it became when issued the order of the Supreme Court and enforcible as such.   Moreover, it is provided by section 3343, subdivision 2, of the Code of Civil Procedure, that "The word 'mandate' includes a writ, process or other written direction, issued pursuant to law, out of a court, or made pursuant to law, by a court, or a judge, or a person acting as a judicial officer, and commanding a court, board or other body, or an officer, or other person, named or otherwise designated therein, to do, or to refrain from doing, an act therein specified."   Therefore, the injunction order in question, although a judge's order in form, was in effect an order of the court, and willful disobedience thereto may be punished as a criminal contempt. (See *Erie Railway Co.* v. *Ramsey*, 45 N. Y. 637; *People ex rel. Negus* v. *Dwyer*, 90 id. 402; *Aldinger* v. *Pugh*, 132 id. 403; *People ex rel. Stearns* v. *Marr*, 181 id. 463.)   Respondents rely upon *Matter of Holle* (160 App. Div. 369), but what was decided in that case was, that as the justice had no jurisdiction to issue the injunction order there in question, he had no authority to punish its violation as a criminal contempt.

The affidavits in this proceeding submitted on behalf of the relator, accompanied by photographs showing the progress of the work despite the injunction order, are not answered by defendants' affidavits, and establish a clear case of willful, continued and studied disobedience of the mandate of the court, and a contemptuous persistence in their purpose to raise the sky sign to its full proposed height, regardless of what the court might do.   Defendants attempt to deny that they have taken any "affirmative action whatever in connection with the erection of said sign since the 7th day of February, 1916."   The Mecca Company now seeks to evade responsibility for its contempt by hiding behind the Gude Company, its lessee; the Gude Company in like manner takes refuge behind the Belmont Company, its contractor; the Belmont Company claims it is shielded from responsibility by the Mayes Company; and the Mayes Company claims that because it was not named in the injunction order, it cannot be punished.   The affidavits prove conclusively a willful disobedience to the injunction order on the part of the original defendants in the Empire Leasing Company suit, namely, the

388 People ex rel. Empire Leasing Co. *v.* Mecca R. Co.

First Department, November, 1916.          [Vol. 174.

Mecca Realty Company and the O. J. Gude Company, the beneficiaries of the violation of the injunction by their increased rentals from the heightened sign. Although parties to the suit and served with the summons, complaint and injunction order on February seventh and eighth respectively, the two corporations permitted the flagrant disobedience of the order of the court and the doing of the forbidden work upon the roof of the building, whereof one was the lessee and the other the sublessee. They could have prevented access to the roof for the performance of unlawful acts thereon. When it suited their purposes to suspend the activities of the contractor, as a condition to obtaining an adjournment of a motion for a mandamus against the superintendent of buildings they found no difficulty in so doing. But at all other times they allowed the open and notorious violation of the injunction order to go on for their benefit until the work was completed. The individual defendants Gans, Froelich, Mansbach and Mayes were all personally served with the injunction order on and between February seventh and ninth. Albert was not served until February twenty-first, but he does not deny the affidavit of Bond that he was personally notified of the existence of the injunction order as early as February seventeenth, when Albert claimed he was acting under the instructions of the attorneys for the Mecca and Gude Companies and he had thereupon notified the subcontractors to proceed with the work. Both the Belmont Iron Works and the Mayes Company had early and ample notice of the issuance of the injunction order and its terms and their contumacious conduct in proceeding with the work is fully established. As to the defendants Oscar J. Gude and W. F. Wentz, they were never served with the injunction order, nor is there any proof that they had knowledge of its terms. The mere fact that their affidavits were used in opposition to the motion to continue the injunction is not sufficient, as there is nothing in the affidavits to show that they knew that they were to be used to oppose the continuance or that the injunction had been issued, nor is such injunction referred to in their affidavits. As to all the defendants save the Mecca and Gude Companies it is claimed that because they were not specifically named in the order, they

cannot be punished for contempt thereof. But not only does it appear herein that they were either agents, servants or employees in the doing of the forbidden work, in whatever way their activities are sought to be covered up, but beyond that (and sufficient in itself to justify their punishment), they all had knowledge of the terms of the injunction order and had been served therewith and still persisted in disobeying it. "An injunction not only restrains the parties to the action in which it was granted, but also, when so drawn, those who act under or in connection with a party, as attorneys, agents or employees. No person with knowledge of the terms of an injunction, even if not a party himself, can aid or co-operate with a party in doing the prohibited act without incurring the penalty prescribed by statute." (*People ex rel. Stearns* v. *Marr,* 181 N. Y. 468.)

As to O. J. Gude and W. F. Wentz the order appealed from is affirmed, without costs; as to all the other defendants it is reversed, with ten dollars costs and disbursements to appellant. The defendants Mecca Realty Company, O. J. Gude Company, Belmont Iron Works, Mayes Construction Company, Jesse Froelich, Albert Gans, Louis Mansbach, Edward H. Mayes and S. S. Albert are each determined to have been guilty of a willful disobedience of the mandate of court, and are each fined the sum of $250.

CLARKE, P. J., MCLAUGHLIN, SCOTT and SMITH, JJ., concurred.

As to O. J. Gude and W. F. Wentz, order affirmed, without costs. As to the other defendants, order reversed, with ten dollars costs and disbursements, and motion granted as stated in opinion. Order to be settled on notice.