HENRIETTA I. RUBIN, Individually and as Liquidator of WORRALL & Co., Plaintiff, v. RICHARD WHITNEY, as President of the NEW YORK STOCK EXCHANGE, etc., and Others, Defendants.

Supreme Court, Trial Term, New York County, April 21, 1937.

*Prince & Loeb* [*Leon M. Prince, Sidney J. Loeb* and *Herbert A. Mossler* of counsel], for the plaintiff.

*Chadbourne, Hunt, Jaeckel & Brown* [*William M. Chadbourne* and *Gerald B. O' Neill* of counsel], for the defendant Vernon.

*Carter, Ledyard & Milburn* [*Leslie D. Dawson* and *Wayne G. Jackson* of counsel], for the defendant Whitney, etc.

*William Zuckerman* [*William Zuckerman* and *Bernard Bayer* of counsel], for the defendant Seligson, as trustee, etc.

*Edward E. Hoenig,* for the defendant Heyman, as receiver, etc.

PECORA, J.    This action involves the determination of conflicting claims to the proceeds of the sale of the seat of Richard P. Worrall on the New York Stock Exchange. The proceeds have been deposited in court to await the decision herein. The plaintiff asserts she is entitled to the fund as a liquidating partner, or trustee, of the firm of Worrall & Co. The trustee in bankruptcy of Worrall contests this, and urges that the proceeds are properly an asset of the bankrupt to be administered by him in accordance with the Bankruptcy Act. The defendant Miles H. Vernon claims a lien or interest in the fund superior to that of all parties, except the

plaintiff Rubin, by virtue of agreements executed in January, 1934, approximately ten months before the bankruptcy. Finally, the defendant Heyman, as a receiver appointed in the Supreme Court, Westchester county, in an action brought by Worrall's former wife to collect unpaid alimony, demands possession of the fund pursuant to an order of sequestration. The New York Stock Exchange is involved in the action only with respect to the claim made by the plaintiff that it should be required to pay interest for failure to turn the fund over to the plaintiff upon demand.

Prior to January 19, 1934, Richard P. Worrall was a member of the New York Stock Exchange. At about that time he owed the stock brokerage firm of Sartorious & Smith the sum of $50,000. In an effort to liquidate that indebtedness, he sought to obtain a loan. Failing this, on January 19, 1934, he entered into an agreement with the plaintiff and one Wood, which created the firm of Worrall & Company. The agreement, designated " Articles of Copartnership," recited that the parties desired " to form a limited partnership under the Laws of the State of New York," and that they wished to define the rights and obligations of the general partners and the limited partner. The plaintiff, Mrs. Rubin, as a limited partner, was to contribute $50,000 while Worrall's share was to be his membership in the New York Stock Exchange. The $50,000 was to be used to discharge the obligation of Worrall to Sartorious & Smith. Under the contract the value of the seat on the Stock Exchange was fixed at $90,000. Worrall agreed to use his membership on the Stock Exchange to further the interests of the partnership. Mrs. Rubin was to receive six per cent on her investment, payable monthly out of the earnings, while Worrall was to get $1,800 per month. Wood, the other general partner, was included in the agreement solely to satisfy the rules of the Stock Exchange requiring two general partners in any contract of limited partnership. Wood is not a party to the present action.

The contract contained provisions for termination of the relationship. In the event of a dissolution of the partnership the plaintiff was to receive, after payment of creditors, her investment of $50,000, " plus or minus one-half, as the case may be, of the amount which the sales price of the seat on the New York Stock Exchange, contributed by the first party, shall rise above or fall below the sum of $90,000." It was also provided that if the seat were sold, the proceeds and all of the other property of the partnership were to be held by the plaintiff in escrow, as trustee in a special account for the purpose of liquidation, and that the plaintiff, after paying expenses and all general creditors of the partnership, was to pay

herself in accordance with the terms of the agreement, satisfy the claim of Vernon, and turn the balance over to Worrall.

The defendant Vernon is also a member of the New York Stock Exchange. In January, 1934, before the agreement of partnership was executed, Worrall was indebted to Vernon in the sum of $40,000. Vernon was informed by Worrall that the proposed arrangement contemplated an extension of time for the payment of Worrall's indebtedness to Vernon during the continuance of the partnership. Vernon assented to this and executed a contract with Worrall and the plaintiff on January 19, 1934, to which was annexed the agreement of partnership.

This contract, after reciting the indebtedness of Worrall to Vernon in the amount of $40,000 and providing for an extension of time for its payment, stated that upon a dissolution of the partnership, the plaintiff would hold in escrow, and pay over to Vernon, such moneys as he would be entitled to receive under the terms of the partnership agreement dealing with liquidation.

The partnership agreement of January 19, 1934, was approved by, and filed with, the New York Stock Exchange. In addition, a copy was filed in the office of the clerk of the county of New York and sufficient notice of the creation of such partnership, as provided by law, was published in the newspaper.

Worrall & Company continued in business until September 10, 1934, when the parties agreed to terminate their status. On that date a contract was signed by Worrall, Vernon and the plaintiff, which provided that the seat on the New York Stock Exchange be sold and that the proceeds of the sale be turned over to the special partnership to be liquidated under the terms of the partnership agreement. It was further stipulated that the plaintiff receive out of the proceeds $50,000 and interest, that the charges against the partnership be paid, and that Vernon receive $30,000 out of the balance then remaining. Any further balance was to be paid to Worrall, who was to apply it to the liquidation of his own debts.

Following the making of the agreement of September 10, 1934, a copy thereof was sent to the New York Stock Exchange. On September 27, 1934, the Stock Exchange approved the sale of the seat for the sum of $83,000 which sum was paid to the Stock Exchange by the purchaser. The money was deposited in a special account kept by the committee on admissions of the Stock Exchange.

On September 27, 1934, the Stock Exchange received letters from Worrall repudiating the agreement of September 10, 1934. That same afternoon there was served on the Stock Exchange an order of Mr. Justice CAREW in an action brought in this court by Worrall against the plaintiff and Wood, for a dissolution of

the partnership of Worrall & Company, and for the appointment of a receiver of its assets. The order directed the defendants to show cause why a receiver should not be appointed, and contained a stay enjoining the defendants in that action " from collecting or receiving or in any manner interfering or intermeddling or disposing of the partnership debts or moneys or other property or effects of said partnership." The motion for the receiver was adjourned from time to time to October 3, 1934. On October 2, 1934, an agreement was signed between Worrall and the plaintiff herein, wherein Worrall withdrew his motion for the appointment of a receiver and consented to the vacation of the stay granted by Mr. Justice Carew. Wood, who was a party to the action, and had been served with process, did not join in the stipulation. However, no order was ever entered vacating the stay. A proposed vacating order, with a stipulation dated October 17, 1934, consenting to the entry of such an order, was submitted to the court for signature; but as the papers on the original motion had not been filed the order was not signed. The action was still pending at the time of the trial herein.

In any event, the Stock Exchange in view of the restraining order of Mr. Justice Carew did not relinquish possession of the funds upon demand made by the plaintiff.

On October 5, 1934, the Stock Exchange was served with an order made by Mr. Justice Close, at the Supreme Court, Westchester county, in an action entitled " Amelia R. Worrall v. Richard P. Worrall," sequestering the assets of Worrall and appointing the defendant Henry K. Heyman as receiver of Worrall's property, The said order contained a stay restraining all persons in the possession of and in the control of the property of Worrall from in any manner disposing of the same, except to turn it over to the receiver. The order resulted from a failure to pay alimony pursuant to a decree of divorce obtained on June 29, 1907.

The plaintiff thereupon commenced this action against the Stock Exchange to recover the fund in its possession. The Stock Exchange appeared on October 20, 1934, and on October 30, 1934, served a notice of motion to interplead Worrall and Henry K. Heyman, as receiver, as parties defendant.

On the same day Worrall filed a voluntary petition in bankruptcy in the United States District Court for the Southern District of New York. On November 22, 1934, Charles Seligson was appointed as trustee in bankruptcy, and on December 1, 1934, as trustee he obtained an order from the United States District Court directing the plaintiff and the Stock Exchange to show cause why the Stock Exchange should not turn over the proceeds

of Worrall's membership in the Stock Exchange to the trustee in bankruptcy for distribution pursuant to the Bankruptcy Law. The said order to show cause contained a restraining provision enjoining the Stock Exchange from transferring or disposing of the sum of $82,739.99 representing the fund in its hands, and also restraining the Stock Exchange from proceeding with its interpleader motion in this action. The United States District Court denied the trustee's application, but the order denying the motion continued the stay contained in the original order to show cause, pending the determination of an appeal. Upon appeal the Circuit Court of Appeals for the Second Circuit affirmed the order of the District Court on July 22, 1935. (*Matter of Worrall*, 79 F. [2d] 88.) In its opinion that court said: " We think that Worrall parted with possession and control over the proceeds of the seat prior to bankruptcy, and that there was a complete vesting of title and possession in Mrs. Rubin as liquidator of the business."

The trustee was relegated to his remedy by plenary suit in the courts of this State.

In August 1935, the Stock Exchange revived its original motion for interpleader, and moved further that the trustee in bankruptcy and Vernon be made parties to the action. On September 5, 1935, an order was entered interpleading the present defendants and continuing the Stock Exchange as a party defendant solely for the purpose of determining its liability, if any, to pay interest for the time the fund was held in its hands until its deposit with the clerk of this court.

The trustee in bankruptcy challenges the validity and effect of the agreement of January 19, 1934, contending that no partnership was actually formed, or existed, at any time. The trustee maintains that the entire arrangement was merely a cloak or subterfuge to conceal a loan which was ineffectually secured by Worrall's seat on the Stock Exchange. In view of this claim the court permitted testimony of the oral negotiations prior to the execution of the agreement. Oral testimony is admissible without violating the parol evidence rule, to show that an instrument which purports to be a contract has no force, efficacy or effect. (*Martin* v. *Peyton*, 246 N. Y. 213, 218; *Baird* v. *Baird*, 145 id. 659; *Grierson* v. *Mason*, 60 id. 394; *Lipe* v. *Beech-Nut Packing Co., Inc.*, 243 App. Div. 433.) However the proof adduced is insufficient to establish the trustee's assertions.

The plaintiff never was willing to lend her money on the security of Worrall's Stock Exchange membership. In fact, the rules of the New York Stock Exchange would be violated by any attempt to do so. The agreement prepared stated that the parties intended

a limited partnership. The plaintiff was willing to put her money into an enterprise, where she could share in profits, and still not be required to participate in the management or control of the business. At the same time in case of failure, she could only lose her investment and would not be personally liable for its debts. The facts thus fit the classical mold of a limited partnership. (Lindley, Partnership [9th ed. 1924], pp. 923 *et seq.;* Burdick, Partnership [3d ed. 1917], pp. 383 *et seq.;* Lavis, Uniform Limited Partnership Act, 65 U. of Pa. L. Rev. 715.)

Historically the limited partnership "was an ideal situation for a nobleman or other person who, debarred by his position from engaging in mercantile pursuits, nevertheless wanted to hazard a part of his fortune in the market place." (Glenn, Liquidation, § 67, p. 108; *Ames* v. *Downing*, 1 Bradf. 321.) The plaintiff, an elderly woman, wanted to put her resources in business, and not make a loan. If the argument of the trustee prevailed, it could be urged in every instance in which a limited partnership is formed, since the primary and sole function of the limited partner is to advance capital. Undoubtedly general partners would much rather pay the prevailing rate of interest and borrow money, than have to share in the profits of their business with a limited partner. Worrall's motive originally may have been to obtain a loan, but his motive must not be confused with his deliberate and intentional act in executing the agreement of January 19, 1934.

There is no evidence here that the agreement was entered into for the purposes of fraud or illegality, or that anyone acted to his or her detriment in supposing it to be other than what it is, an agreement for a limited or special partnership. There is no secrecy in the transaction. The agreement was filed with the Stock Exchange and approved by it. Notice was given in the newspapers. In view of the approval of the Stock Exchange, it is strange that the trustee urges that the rules of the Stock Exchange were violated by the execution of the agreement. But even if a violation existed the trustee is not in a position to raise this claim to defeat the rights of the plaintiff. (*Matter of Smith-Flynn Commission Co.*, 292 Fed. 465 [C. C. A. 8th Cir.].)

Nor is there any proof that fraud or duress was practiced on Worrall. He was a man almost seventy years of age, accustomed to transactions of substance, and fully aware of his rights and responsibilities. Furthermore, he was represented by able counsel.

All of the terms of the agreement lead to a construction of a limited partnership. It is clear that the intention of the parties coincided with the agreement executed. No equitable basis has

been established here for disregarding or rescinding this agreement. " The courts will not set aside a bargain so made." (*Youssoupoff* v. *Widener*, 246 N. Y. 174.)

That Worrall never questioned that the contract was one of limited partnership is demonstrated by his own actions thereafter. Certainly as late as September 27, 1934, he began an action in this court to *dissolve the partnership* and to have a receiver appointed. Such deliberate and unequivocal conduct is inconsistent with the claims of subterfuge now made. Worrall is thus estopped from denying the existence of the partnership and the estoppel extends to his trustee in bankruptcy. (*Kelly* v. *Scott*, 49 N. Y. 595, at p. 602; *Aldine Trust Co.* v. *Smith*, 182 Fed. 449 [C. C. A. 3d Cir.].)

The trustee in bankruptcy has argued that a security status was created and that the interests of the plaintiff and Vernon are unenforcible because Worrall reserved in himself the power to waste the security *res*, namely, the seat on the Exchange. The trustee in support of his contention cites the cases of *Benedict* v. *Ratner* (268 U. S. 353) and *Matter of Hoey & Co.* (19 F. [2d] 764 [1927 C. C. A. 2d Cir.]; certiorari denied, 275 U. S. 550). The view taken by this court as to the validity and effect of the agreement of January 19, 1934, obviously makes the doctrines of these cases inapplicable. Furthermore in those cases, and decisions following them, there existed an express agreement between the parties to permit the waste of the security *res;* a definite right was given, an element lacking and negatived herein. The restraints incorporated in the agreement (¶¶ 1, 2, 13 and 19) demonstrate that rather than having accorded to Worrall the power to waste the *res*, that power was effectively taken from him. Were the argument of the trustee sound a Stock Exchange seat could never be held by a partnership, or be subject to claims of partnership creditors to the exclusion of individual creditors. However, such rights can be created and are recognized. (See *Matter of Amy*, 21 F. [2d] 301 [C. C. A. 2d Cir. 1927]; *Matter of Strassburger*, 12 Fed. Supp. 420 [Dist. Ct. S. D. N. Y. 1935].) Indeed the decision of the Circuit Court of Appeals in the preceeding brought by the trustee herein demonstrates this. (*Matter of Worrall, supra.*)

The trustee further urges that the plaintiff's claim, and that of Vernon, are ineffective because the fund came into existence within four months of bankruptcy. Therefore, to give either any share thereto would constitute a voidable preference under section 60, paragraph b, of the Bankruptcy Act (U. S. Code, tit. 11, § 96, ¶ b). This argument is fallacious primarily because it assumes the fund is the property of Worrall, and furthermore because the rights of

the parties to the seat, and the proceeds of the sale thereof, were crystallized on January 19, 1934, approximately ten months prior to bankruptcy. The fact that possession of the fund was taken within the four months' period is immaterial if a valid interest in the property had been created prior thereto. Under those conditions the possession would relate back to the date of the agreement. (*Goldstein* v. *Rusch*, 56 F. [2d] 10 [C. C. A. 2d Cir. 1932].) The decisions cited by the trustee all involve agreements to create liens in property *to be acquired*, and are, therefore, not apposite. Here Vernon acquired an equitable right at the time of the agreement, and no further acts on his part were necessary. The property out of which the fund was to come into being existed at the time of the execution of the agreement. His rights vested then, when Worrall was not insolvent, and more than four months prior to bankruptcy.

The conclusion reached herein that the plaintiff is entitled to the fund, coincides with that of the Circuit Court of Appeals in *Matter of Worrall (supra)*. The decision in that case, however, has not been considered as *res judicata*. But in view of the manner in which the issues were submitted to the Circuit Court of Appeals and to the District Court, the decisions of those courts must, of necessity, have involved a consideration of the merits. Though not strictly *res judicata*, the decision of the Circuit Court of Appeals cannot be ignored as a precedent.

Having determined that a valid partnership existed, the bankruptcy of one of the general partners will not disturb the structure of the partnership. Worrall and his trustee in bankruptcy are entitled to what may remain after a payment of the partnership debts and the satisfaction of the claims of the plaintiff and Vernon. Worrall has an interest in the surplus after liquidation of the partnership. The solvent partners are entitled to settle the partnership business. (U. S. Code, tit. 11, § 23, ¶ h; *Francis* v. *McNeal*, 228 U. S. 695.)

Thus, pursuant to the agreement of January 19, 1934, as modified by the agreement of September 10, 1934, the plaintiff is entitled to the fund for purposes of liquidation of the partnership.

Under the partnership agreement of January 19, 1934, and the agreement between the partnership and Vernon on the same date, there was an equitable assignment to Vernon of the sum of moneys then due him. The assignment was of funds to come into the hands of the liquidating partner upon the dissolution of the partnership. On January 19, 1934, Vernon was a member of the New York Stock Exchange and had been such since 1922. Since both Worrall and

Vernon were members of the Stock Exchange at the time the loans were made to Worrall by Vernon, the latter had a lien on the proceeds of Worrall's membership in January, 1934, which could be perfected by the filing of his claim and a determination of its validity by the membership committee (Const. New York Stock Exchange, art. XIV, §§ 3, 4; art. V). (See *Chicago Board of Trade* v. *Johnson*, 264 U. S. 1; *Hyde* v. *Woods*, 94 id. 523; *Belton* v. *Hatch*, 109 N. Y. 593.)

Therefore, in extending the time for the payment of his loan, Vernon was parting with valuable consideration. All the other elements of an equitable assignment were present. The membership of Worrall on the New York Stock Exchange was to be sold upon the termination of the partnership. There was, therefore, the possibility that the proceeds resulting from that sale would come into actual being at a future date. To constitute a valid equitable assignment the fund need not be in existence at the time the contract is made. (3 Pomeroy, Equity Jurisprudence [4th ed.], § 1283; Bispham, Principles of Equity [11th ed.], p. 278; *Hinkle Iron Co.* v. *Kohn*, 229 N. Y. 179.) The defendant Vernon, therefore, had an interest in this fund to be created, which interest was established on January 19, 1934, ten months before bankruptcy.

By the agreement of September 10, 1934, the terms of dissolution were changed. Under it the plaintiff was to receive $50,000 and interest, and the defendant Vernon agreed to reduce his claim to $30,000. Vernon now contends that by virtue of Worrall's breach of the agreement of September 10, 1934, the parties are relegated to their rights under the contract of January 19, 1934. There is no force in this argument. The plaintiff did not breach this agreement. The act to be performed by her was to liquidate the business after the sale of the seat on the Exchange. A breach by one of the parties to a tripartite agreement is not a basis for rescission as to the other parties. (*Berry Harvester Co.* v. *Wood Co.*, 152 N. Y. 540; *Matter of Gude*, 150 Misc. 56; 151 id. 59; affd., 242 App. Div. 609.)

The agreement of September 10, 1934, was binding and must be given its full force and effect. In a distribution of the fund by the plaintiff as liquidating partner the defendant Vernon will be entitled to his share as provided for in the agreement of January 19, 1934, as modified by the contract of September 10, 1934.

There remains the claim of the receiver in the sequestration proceedings. The order appointing the receiver directed that he take into his possession all property of Richard P. Worrall and apply it to the payment of alimony which had accrued and to

the payment of alimony which might accrue in the future. Alimony had been paid to Mrs. Worrall up to June or July, 1934. Consequently when the agreements of January 19, 1934, were made there was no claim for unpaid alimony. Since this court has decided that title to the fund is in the plaintiff as liquidator, the fund was not property of Worrall which would come within the terms of the order of sequestration. In *Rosenberg* v. *Rosenberg* (259 N. Y. 338) the Court of Appeals, in referring to the rights of a receiver under sections 1171 and 1171-a of the Civil Practice Act, said (p. 342): " However broadly these sections may be interpreted, they are at least limited to property which, beyond any reasonable question, belongs to the husband."

The receiver is, therefore, in the same position as the trustee, *i. e.*, their rights to the fund involved, or part of it, can only arise in the event of a balance remaining after payment of the claims of Mrs. Rubin, partnership creditors and Vernon.

The plaintiff seeks interest from the Stock Exchange from September 27, 1934, when she made a demand that the fund in possession of the Stock Exchange be turned over to her as liquidator. In view of all the circumstances, the plaintiff must fail in this claim. At the time the demand was made, the Stock Exchange had been notified by Worrall and his attorney that Worrall had repudiated the agreement of September 10, 1934. Further, and more significant, there had already been served the restraining order in the action for a dissolution brought in this court by Worrall against his partners. On October 3, 1934, the Stock Exchange was put on notice that a receiver of Worrall's property had been appointed by Mr. Justice CLOSE, although the order was not served until October 5, 1934. When Worrall filed a petition in bankruptcy, a restraining order was served upon the Exchange prohibiting it from turning the proceeds over to any one. Thus until this action was commenced, and the Stock Exchange deposited the fund in this court, the Stock Exchange either could not safely determine to whom the money should be paid, and in what proportions (*Hurley* v. *Tucker*, 128 App. Div. 580; affd., 198 N. Y. 534), or was under the inhibition of orders of various courts preventing it from so doing.

" The allowance of interest is sometimes determined upon considerations of equity and natural justice." (*Tuzzeo* v. *American Bonding Co.*, 226 N. Y. 171.) Here not only the equities require a denial of interest, but it is well established that where a person in possession of funds is unable to pay over the funds because of a restraining order, he will not be penalized with interest. (*Stevens*

v. *Barringer*, 13 Wend. 639; *Gillespie* v. *Mayor*, 3 Edw. Ch. 512; *Norris* v. *Massachusetts Mutual Life Ins. Co.*, 131 Mass. 294; 1 Sedgwick Damages [8th ed.], § 340.) It is no answer to the Stock Exchange that it was not a party to the action in which it was served with a restraining order. The fact is that it had notice, by virtue of service of the order on it; and if it disregarded the order or violated it, the Exchange would have been guilty of aiding in the commission of the prohibited act. (*People ex rel. Stearns* v. *Marr*, 181 N. Y. 463; *People ex rel. Empire Leasing Co.* v. *Mecca R. Co.*, 174 App. Div. 384.) A technical objection is raised by the plaintiff that the restraining order of Mr. Justice CAREW merely enjoined the plaintiff from " collecting " the money and did not enjoin the Stock Exchange from " *paying* " it to the plaintiff. Certainly if the Stock Exchange had paid, it would be aiding and abetting the collection of the fund by the plaintiff. Persons should not be penalized for compliance with court orders. They should not be required to act at their peril where a reasonable interpretation indicates that observance is necessary. The Stock Exchange was reasonable in its conclusion that the order of Mr. Justice CAREW restrained payment by enjoining collection. In *Gaston* v. *Shunk Plow Co.* (161 Ga. 287; 130 S. E. 580) the court held that enjoining holders of warrants from receiving payment from a county effectually prevented the county from paying the same. Following the restraining order of Mr. Justice CAREW were the orders of Mr. Justice CLOSE and the Bankruptcy Court. The Stock Exchange was, therefore, acting in good faith, and in an attempt to comply with the directions of courts of competent jurisdiction. It would be inequitable to hold that for so doing it must now pay interest for the time it held the funds prior to their deposit in this court.

The plaintiff is, therefore, entitled to receive the fund for the purposes of distribution in accordance with the terms of the agreements of January 19, 1934, as modified by the agreement of September 10, 1934, and this complaint is dismissed as against the New York Stock Exchange. Let judgment be entered in accordance with this opinion.